IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| PRABHU BARATHI<br>and VIJAYALAKSHMI RAJAGOPALAN, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 180385G |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

This case is ready for decision after trial on whether Plaintiff Vijayalakshmi Rajagopalan's tuition payments were deductible as employee business expenses on Plaintiffs' 2015 return. Subramaniam J. Iyer, accountant, appeared on behalf of Plaintiffs and testified. Melinda Emerson, auditor, appeared on behalf of Defendant. Plaintiffs' Exhibits 1 to 8 and Defendant's Exhibits A to D were admitted.

## I. STATEMENT OF FACTS

In 2015, Ms. Rajagopalan had been an employee of Infosys Limited for over ten years, working in the company's Retail unit. (Ex 7 at 1, 6.) She had been promoted from Business Systems Analyst to Lead Consultant in October 2014, and she continued to hold that position when she separated from the company in 2019 to take another job as a consultant. (*Id*. at 1–2, 6.)

As a lead consultant, her principal duty was leading "cross-border teams" in managing software projects. Plaintiffs submitted a partial list of "areas of responsibility" for a lead consultant from an employer; the document does not show which employer. (Ex 7.) That list includes technical duties, such as evaluating business processes and designing software solutions; customer-service duties; and lower-level managerial duties, such as monitoring the

cost of a given project, coaching team members, and giving input for strategic planning. (*Id*. at 3–4.) Lead consultants were also expected to contribute to sales and create intellectual property through "thought leadership." (*Id*.)

During 2015, Ms. Rajagopalan was enrolled in the University of Washington's executive MBA (EMBA) program. It appears she matriculated in Fall 2014 because her application materials are dated July 2014. (*See* Ex 7 at 5–6.) According to Mr. Iyer, her goal was to supplement her technical skills with a general understanding of business and with "soft" skills for managing people. After completing the EMBA program, Ms. Rajagopalan continued for "several years" in the same job with substantially the same duties. (Ex 8 at 4, 7.)

Plaintiffs claimed a Schedule A deduction for $41,029 in tuition expenses, which Defendant disallowed. Plaintiffs now ask the court to reverse the adjustment and allow the deduction. Defendant asks the court to uphold its assessment. For this appeal, Defendant concedes Plaintiffs made the payments and that Ms. Rajagopalan was not entitled to have them reimbursed by Infosys.

## II. ANALYSIS

The issue for decision is whether Ms. Rajagopalan's 2015 tuition payments are deductible as employee business expenses under section 162(a) of the Internal Revenue Code (IRC). Although the IRC is federal law, it is relevant here because taxable income in Oregon equals taxable income as defined in the IRC where no modifications, additions, or subtractions apply. *See* ORS 316.022(6); 316.048.[1]

As the parties seeking affirmative relief, Plaintiffs must bear the burden of proof. *See* ORS 305.427. They can meet that burden by providing evidence supporting their position that

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

outweighs any evidence provided by Defendant to support its position. *See DeGroat v. Dept. of Rev.*, TC 5322, 2019 WL 369166 at \*2 (Or Tax Jan 29, 2019), *as amended* (Feb 11, 2019).

Although tuition is often a personal expense for which no deduction is allowed, it can be deductible as a business expense if it meets specific criteria. *See* Treas. Reg. § 1.162–5(a). Deductible tuition expenses must either be for education expressly required to retain one's current employment or else for education that "[m]aintains or improves skills required by the individual in his employment or other trade or business[.]" *Id*. Regardless of whether one of those criteria is met, no deduction is allowed if the education fulfills minimum requirements for the taxpayer's employment or if the education "will lead to qualifying him in a new trade or business." Treas. Reg. § 1.162–5(b)(2), (3).

Here, the parties dispute whether Ms. Rajagopalan's EMBA coursework would lead to qualifying her in a new trade or business. *See* Treas. Reg. § 1.162–5(b)(3)(i). The parties agree that an EMBA was not required by Infosys, either as a minimum qualification for Ms. Rajagopalan's job or as a condition of her retaining that job. Defendant did not challenge Plaintiff's contention that the EMBA courses maintained or improved skills Ms. Rajagopalan needed as a lead consultant.

The test for whether education qualifies a taxpayer for a new trade or business is whether the education qualifies the taxpayer to perform activities "significantly different" from the "general type of work" the taxpayer was previously qualified to perform. *See* Treas. Reg. § 1.162–5(b)(3); *Glenn v. Comm'r*, 62 TC 270, 275 (1974). It is an objective standard; a taxpayer's intent in obtaining the education is not determinative. *Browne v. Comm'r*, 73 TC 723, 727 (1980). Furthermore, a taxpayer may become qualified for a new trade or business even if actual duties do not change. *Robinson v. Comm'r*, 78 TC 550, 556–57 (1982). There is some

indication that qualification in a subspecialty keeps one within the same trade, whereas qualification in a higher discipline does not. Thus, a psychiatrist qualifying as a psychoanalyst remains in the same trade, but a public accountant qualifying as a certified public accountant and a licensed practical nurse qualifying as a registered nurse do not. *Compare* Example 4, Treas. Reg. § 1.162–5(b)(3) (psychiatrist) *with Glenn*, 62 TC at 275 (accountant) *and Robinson*, 78 TC at 558 (nurse).

Whether MBA coursework qualifies a taxpayer for a new trade or business depends on whether the taxpayer was previously qualified for general management duties, regardless of the title held. Thus, an employee whose tasks are significantly similar to a manager's before beginning MBA coursework is not qualified for a new trade or business by such coursework. *Blair v. Comm'r*, 41 TCM (CCH) 289 (1980) (so holding where "only major difference" between employee's duties before and after obtaining MBA and promotion to management was that employee now made decisions who formerly only made recommendations); *see also Allemeier v. Comm'r*, 90 TCM (CCH) 197 (2005) (MBA did not qualify salesman with marketing, finance, and management duties for new trade or business). However, an employee whose duties are merely "technical" does receive a new qualification from MBA coursework. *McIlvoy v. Comm'r*, 38 TCM (CCH) 987 (1979) (holding MBA coursework qualified senior electronics technician in new trade or business).

Among the U.S. Tax Court summary opinions—which are not given precedential value by that court—research reveals two involving EMBA coursework. Plaintiffs urge consideration of *Kopaigora v. Comm'r*, 12382-13S, WL 4094723 (Aug 2, 2016), in which a formerly "well-established finance and accounting business manager" was held not to have qualified for a new

trade or business by EMBA coursework. However, the more factually on-point case is *Creigh v. Comm'r*, 31504-15S, WL 1507754 (Apr 27, 2017).

In *Creigh*, the taxpayer was a former project manager who "used her skills as a software engineer to manage teams of consultants and professionals in designing and implementing the integration of business processes and computer software systems." 2017 WL 1507754 at *1. She "was not involved in business strategy development or marketing" and "[h]er management skills were limited to managing people on a particular project." *Id*. at *4. After taking time off to raise her child, the taxpayer entered an EMBA program as a step toward obtaining consulting work similar to what she had done before. Her coursework was "varied and encompassed a large number of business fields: economics, management, finance, accounting, marketing, mergers and acquisitions, business policy, negotiations, valuation, and international business." *Id*. The court held that the taxpayer's duties as a project manager "were largely unrelated to her EMBA coursework[,]" which qualified her for "a myriad of business, management, finance, and marketing tasks" beyond managing people on a single project. *Id*. at *5. The fact pattern of *Creigh* shows how software consulting work may differ from the management work for which an EMBA is a qualification.

In the present case, Ms. Rajagopalan did not testify, and the evidence contains only a bare outline of her official duties and no information at all about her coursework. What evidence there is suggests a close resemblance to *Creigh*. Like the taxpayer in *Creigh*, Ms. Rajagopalan had a technical background and led teams that identified and implemented software solutions suited to clients' business processes. Like the taxpayer in *Creigh*, and unlike the taxpayers in *Blair*, *Allemeier*, and *Kopaigora*, her prior management duties were limited to leading particular projects. The evidence does not suggest that she was previously qualified for the more strategic

finance, marketing, and personnel tasks associated with general management. If there are relevant factual distinctions between Plaintiffs' situation and the situation of the taxpayer in *Creigh*, they are not in evidence.

Plaintiffs have not carried their burden of proof. On the evidence before the court, it is more likely than not that Ms. Rajagopalan's EMBA coursework qualified her for a trade as a general manager that significantly differed from her trade as a lead consultant.

## III. CONCLUSION

Because Ms. Rajagopalan's coursework qualified her for a new trade or business, a deduction for her tuition expenses is disallowed by Treasury Regulation section 1.162–5(b)(3). Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of January, 2020.

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by* mailing *to: 1163 State Street, Salem, OR 97301-2563; or by* hand delivery *to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within* 60 *days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on January 27, 2020.*